UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES THE PAINTERS UNION
DEPOSIT FUND, a voluntary
Unincorporated trust,

Case No. 2:22-cv-12416

      PLAINTIFFS,

v.

EUGINIO PAINTING COMPANY, a
Michigan corporation

Sean F. Cox
United States District Court Judge

      DEFENDANT.
_____/

**OPINION & ORDER**
**GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO COMPEL AUDIT [ECF NO. 14] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 18]**

On October 10, 2022, Plaintiffs Trustees of the Painters Union Deposit Fund ("Plaintiffs") filed this action against Defendant Eugenio Painting Company ("Defendant") asking this Court to order Defendant to submit to an audit pursuant to their collective bargaining agreement ("CBA"), the Labor Management Relations Act of 1947 ("LMRA"), and the Employment Retirement Income Security Act ("ERISA"). The matters currently before the court are the parties' cross-motions for summary judgment—Plaintiffs' Motion for Partial Summary Judgment and to Compel Audit (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 18). The parties have briefed the issues and the Court heard oral argument on September 14, 2023.

For the reasons set forth below, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment and to Compel Audit, (ECF No. 14) which seeks Defendant's compliance with the audit due to Defendant's "Failure and Refusal to Permit Audit" (Count I) and DENIES Defendant's Motion for Summary Judgment. (ECF No. 18).

1

## BACKGROUND

In June 2016, Defendant entered into a collective bargaining agreement ("2016 CBA") with the Painters District Council 1M of the International Brotherhood of Painters and Allied Trades (AFL-CIO) ("the Union"). (ECF No. 14-2). As stated in 2016 CBA:

> The terms of this Agreement shall be from July 24, 2014 through May 31, 2018 and from year to year thereafter unless either party desires a change, in which case it is to notify the opposite party in writing at least sixty (60) days prior to May 31, 2014 or sixty (60) days prior to the anniversary date of any extension thereof.

(ECF No. 14-2, PageID.192) (emphasis added). The parties later entered into a new CBA, the 2018 CBA, which stated that:

> The term of this Agreement shall be from July 18, 2018 through May 31, 2022 and continue year to year thereafter unless either party desires a change, in which case it is to notify the opposite party in writing at least sixty (60) days prior to May 31, 2022 or sixty (60) days prior to the anniversary date of any extension thereof. This agreement shall remain in full force and effect until May 31, 2022 and shall renew itself from year to year unless either party shall notify the other party, in writing by certified mail, at least (60) days prior to any anniversary date of this Agreement of its desire to change the agreement in any way or to terminate the agreement.

(ECF No. 14-3, PageID.218) (emphasis added). The 2016 and 2018 CBAs were nearly identical. Changes from the 2016 to the 2018 CBA included updates to the wage and benefit rates as well as the dates covered by the agreement. (ECF No. 19, PageID.458).

Under the terms of both CBAs, Defendant was obligated to make periodic payments to Plaintiffs for various employee benefit funds (collectively, "the Funds") established under the CBAs.[1] (ECF No. 1, PageID.3; ECF No. 14-2; ECF No. 14-3). A portion of these payments represented a portion of wages earned by the employees of Defendant who worked within the jurisdiction of the Union. (ECF No. 1, PageID.3).

---

[1] Plaintiffs and the Funds are third-party beneficiaries of the CBAs. (ECF No. 1, PageID.4).

The CBAs, as well as the benefit fund trust agreements ("FTAs")—which incorporated the CBAs via reference—required Defendant to submit monthly reports indicating the amount of contributions that Defendant is obligated to pay, and further required that all payments to the various fringe benefit funds be made on a timely basis. (*Id.* at 4). These agreements also provided for the assessment of liquidated damages if the payment was not made on time. (*Id.*)

On August 10, 2022, Plaintiffs had a meeting during which they received information that "Defendant had been observed repeatedly and flagrantly using non-union painting contractors in violation of the CBA and/or information indicating that Defendant was failing to pay contributions and/or amounts on covered work required under the CBA." (*Id.* at 5). After discussion at that meeting, Plaintiffs ordered a comprehensive audit of Defendant pursuant to Article XX, Section 2 of the 2016 CBA. (*Id.*)

On August 12, 2022, Plaintiffs sent a letter notifying Defendant of the order for a comprehensive audit. (ECF No. 1-2). The letter included a list of documents to be produced, stated the period that the audit would cover—August 1, 2016, through the date of the audit—and a request for Defendant to confirm or schedule a date and time for the audit. (*Id.*) Plaintiffs claim Defendant repeatedly delayed in producing the requested documents. (ECF No. 1, PageID.6).

On September 9, 2022, Plaintiffs sent a letter to Defendant advising that the audit would be conducted remotely, rather than at Defendant's offices and requested Defendant upload or deliver the requested documents to the Fund office. (*Id.*) By September 21, 2022, Defendant had still not provided all the requested documents. (*Id.*) That same day, Plaintiffs' Fund auditor advised Defendant's representative/Controller of the documents that still needed to be provided for the audit, including 1099s, 1096s, check registers for all accounts, bank statements for all accounts,

3

copies of cancelled checks, timecards and sheets, and all subcontractor agreements for the audit period. (*Id.*)

On September 23, 2022, Defendant's representative/Controller advised the Plaintiffs' Fund auditor that it was "not authorized" to produce the remaining requested documents. (*Id.* at 7). Plaintiffs sent another letter to Defendant that same day stating that if Defendant did not produce the requested documents for the audit, a lawsuit would be filed to compel the audit. (*Id.*)

On October 10, 2022, Plaintiffs filed the present action before this Court. (ECF No. 1). The Complaint contained two counts. *Id.*

Count I alleged Defendant's "Failure and Refusal to Permit [the] Audit." (ECF No. 1, PageID.7).

Count II alleged Defendant's "Failure to Pay Contributions and/or Breach[ed] the CBA" in violation of the terms of the CBAs, the FTAs, Section 502 of ERISA, 29 U.S.C. § 1132 and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185. (ECF No. 1, PageID.8).

In their Complaint, Plaintiffs request the following relief:

A. That this Court order Defendant to produce its books, accounts, and records forthwith for a comprehensive audit, for the purpose of determining whether or not Defendant has complied with the provisions of CBA;

B. That this Court enter judgment against Defendant and in favor of Plaintiffs in the amounts that are determined to be the correct amounts owing by Defendant, plus interest for each delinquent monthly contribution, and costs and attorney fees incurred by Plaintiffs in the preparation, institution and prosecution of this proceeding;

C. That the Court award any and all amounts permitted under 29 U.S.C. § 1132(g)(2), including, without limitation, unpaid contributions; interest on the unpaid contributions; an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan; and reasonable attorney's fees and costs of the action;

D. That this Court decree specific performance of the collective bargaining agreement and trust provision obligations of Defendant;

   E. That this Court grant such other and further relief as may be deemed appropriate.

(ECF No. 1, PageID.1–2).

  The motions currently before the court are the parties' cross-motions for summary judgment. Plaintiffs filed their Motion for Partial Summary Judgment and to Compel Audit on April 18, 2023. (ECF No. 14). Defendant filed its own Cross-Motion for Summary Judgment on May 24, 2024. (ECF No. 18). Both motions were fully briefed, and a hearing was held on September 14, 2023.

## **STANDARD**

  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

  The standards upon which courts evaluate motions for summary judgment do not change when "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary

>    judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)).

## ANALYSIS

The parties have filed cross-motions for partial summary judgment and for summary judgment. Plaintiffs' Motion for Partial Summary Judgment and to Compel Audit (ECF No. 14) asks the Court to grant partial summary judgment as to Count I of the Complaint, Failure and Refusal to Permit Audit, and asks the Court to enforce its audit rights and obligations under ERISA and LMRA § 301 as set forth in the applicable CBAs. (ECF No. 14, PageID.168). Plaintiffs also request an award of fees and costs pursuant to ERISA, 29 U.S.C. §1132(g).

Defendants argue that: (1) the 2018 CBA replaced and negated the 2016 CBA, (ECF No. 16, PageID.293) and that (2) because Plaintiffs did not include the 2018 CBA in their Complaint, Plaintiffs failed to properly plead a claim for an audit under the 2018 CBA (*Id.* at PageID.297), and (3) that the 2018 CBA does not permit the audit in either the time or scope requested by Plaintiffs. (*Id.* at PageID.298). Defendant's Motion for Summary Judgment and the accompanying briefs largely reflect the same arguments made in response to Plaintiffs' Motion for Partial Summary Judgment and to Compel Audit.

### I.  Collective Bargaining Agreements (CBAs)

In both motions, the parties make virtually identical arguments regarding whether and which agreements are controlling. The applicable agreements include the Funds' Trust Agreements ("FTAs"), the 2016 CBA, and the 2018 CBA.

6

Plaintiffs argue that the FTAs, the 2016 CBA, and the 2018 CBA are all binding, valid, and contain the same audit obligations. As such, Plaintiffs argue that the audit rights within these documents must be enforced. (ECF No. 14, PageID.168).

Defendant argues that only the FTAs and the 2018 CBA are valid and binding and that these agreements do not require Defendant to submit to the audit as requested by Plaintiffs. Defendant also notes that the FTAs do not expand the audit rights listed in the 2016 CBA. (ECF No. 16, PageID.297) Rather, the FTAs only reference the auditing power inherent each individual employer's CBA. (ECF No. 16, PageID.297). In other words, both parties agree that the FTAs and the 2018 CBA are valid and binding. What they disagree on is (1) the validity of the 2016 CBA, and (2) the interpretation of the terms and effect of the 2018 CBA.

Before determining how to interpret the CBAs' terms, the Court must first address the validity of the CBAs themselves.

    **a.**    **Validity**

The crux of Defendant's argument is that the 2018 CBA was a new contract that replaced the 2016 CBA, meaning the 2016 CBA no longer has any force or effect. (ECF No. 16, PageID.293). Defendant claims that the following language from the 2018 CBA's "Exclusive Agreement" section serves as a merger and integration clause "that negates any other contracts and/or agreements that provide for different terms than those contained in the 2018 CBA":

> **No contract or agreement**…**between the Employer and any representative of the Union**, under which the terms, rates, hours or conditions of employment are less favorable to Employees than those herein specified, shall have any force or effect[.] No modification of this contract shall have any effect unless such modification have been signed **by the Employer and the Union** and executed under the seal of the Union[.]

(ECF No. 16-1, PageID.328) (emphasis added). One of the few differences between the CBAs is that the 2018 CBA included updates to the 2016 CBA's wage and benefit rates. (ECF No. 19,

7

PageID.458). In other words, Defendant argues the 2016 CBA is a contract or agreement between the Employer and the Union with less favorable terms per the language in the 2018 CBA, making the 2018 CBA invalid. (ECF No. 16, PageID.293).

Defendant theorizes that if the 2016 CBA is invalid under the 2018 CBA, that Plaintiffs have failed to properly plead a claim for an audit under the controlling provisions under the 2018 CBA because Plaintiffs only reference the 2016 CBA in their Complaint. However, Defendant cites no caselaw to support this assertion. Defendant only argues that Plaintiffs' failure to note the existence of the 2018 CBA in its Complaint is "suspect" and that this failure warrants granting summary judgment in Defendant's favor. (ECF No. 18, PageID.376).

Plaintiffs disagree. Plaintiffs argue that the 2018 CBA does not replace the 2016 CBA, but rather is its immediate successor. (ECF No. 17, PageID.356).

Plaintiffs argue that the "Exclusive Agreement" clause is not a merger and integration clause as Defendant claims. Rather, it is boilerplate language that "is intended to prohibit agreements outside of the CBA[.]" (ECF No. 17, PageID.356). Further, even if the clause did not apply to a new CBA, the 2016 CBA does not fall under the "Exclusive Agreement" clause's definition of being "less favorable" than the 2018 CBA because they cover entirely different periods of time—July 2014 through May 2018 under the 2016 CBA, and July 2018 through May 2018 under the 2018 CBA. (ECF No. 17, PageID.356).

In other words, Plaintiffs argue a CBA that covers a new and distinct time period cannot be considered a replacement of the prior CBA. Rather, the 2018 CBA is the "immediate successor to the 2016 CBA" (ECF No. 17, PageID.356). Plaintiffs cite no caselaw to support their assertions regarding the validity of the 2016 CBA in relation to the 2018 CBA.

8

This Court finds Defendant's interpretation of the "Exclusive Agreement" clause is incorrect. This clause does not refer to agreements between the Employer and the Union. It refers to agreements between the Employer and "any *representative of the Union*". (ECF No. 16-1, PageID.328) (emphasis added). In other words, this clause is meant to prevent representatives of the Union from entering into side deals with Employers. It is not meant to—and does not—negate any other or prior contracts with the Union. The intent to distinguish between "the Union" and "any representative of the Union" is clear:

> **No contract or agreement**…**between <u>the Employer</u> and <u>any representative of the Union</u>**, under which the terms, rates, hours or conditions of employment are less favorable to Employees than those herein specified, shall have any force or effect. No modification of this contract shall have any effect unless such modification have been signed **by <u>the Employer</u> and <u>the Union</u>** and executed under the seal of the Union.

(ECF No. 16-1, PageID.328) (emphasis added). This section thus clearly differentiates between "the Union" and "any representative of the Union".

As Defendant correctly states, Sixth Circuit precedent is clear that the court employs "'ordinary contract principles to the extent those principles are not inconsistent with federal labor policy.'" *Trustees of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro Servs., Inc.*, 65 F.4th 841, 845 (6th Cir. 2023) (citing *Operating Eng'r's Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1051 (6th Cir. 2015)). Further, when enforcing ERISA plans, courts adhere to "the 'principle that contractual provisions should be enforced as written[.]'" *Id.* at 847 (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013)). If the words of a written contract are clear and unambiguous, its meaning should be ascertained in accordance with its plainly expressed intent. *Id.* at 847.

Accordingly, this Court should interpret the "Exclusive Agreement" clause of the 2018 CBA as intended and written. This clause should not be interpreted as a merger and integration

clause nor as a clause that invalidates any prior agreements between the Union and the employer, including the 2016 CBA. The 2018 CBA does not replace or negate the 2016 CBA. This Court therefore finds the 2016 CBA to be valid and enforceable.

### b. Scope of Audits

Even if the 2016 CBA were not valid, the scope of the audit would remain the same. That is because the audit terms of both the 2016 and 2018 CBAs are identical. (ECF No. 14-2; PageID.184; ECF No. 14-3, PageID.210). This means that the validity of the 2016 CBA only determines when—and not whether—the audit as requested by Plaintiffs can take place. Further, the parties do not dispute that Defendant is subject to the 2018 CBA.

The only issue that remains is the scope of the audit that the CBAs permit.

The audit terms of both the 2016 and 2018 CBAs state:

> Each Employer, signatory to this Agreement, hereby authorizes and empowers any accountant selected by the Trustees of any said Funds to make **regular audits of the Employer's payroll and other records to ascertain whether the Employer has complied with the requirements of this Agreement**. Each Employer, signatory to this Agreement, hereby further authorizes and empowers any accountant selected by the Trustees of any said Funds **to have access to, and to inspect any and all books, records, accounts, ledgers, and records of original entry, for the purpose of determining whether or not the Employer has conformed with the provisions of this Agreement.**

(ECF No. 14-2, PageID.184; ECF No. 14-3, PageID.210–11).

In their motion, Plaintiffs ask the Court to compel a comprehensive audit of Defendant's accounts and records. (ECF No. 14, PageID.158). Plaintiffs claim that "[c]omprehensive audits include examination of general check (e.g. non-payroll) legers, disbursement records, and bank

accounts, that are more likely to disclose payments to subcontractors or individuals in violation of the CBA." (ECF No. 14, PageID.158, n.1).

Defendant does not argue that a comprehensive audit is not permitted under the terms of the CBAs. Instead, Defendant claims Plaintiffs' request is "woefully overbroad" because it does not limit its request to work performed within the territorial jurisdiction of the 2018 CBA. (ECF No. 16, PageID.298). The "[t]erritorial [j]urisdiction" of the 2018 CBA is "the geographical area that covers this agreement which includes Wayne, Oakland, Macomb, Monroe, Lenawee, Washtenaw, Jackson, Hillsdale counties and part of Livingston County…." (ECF No. 14-3, PageID.197; ECF No. 16-1, PageID.307).

In support of its argument, Defendant cites *Trustees of Michigan Regional Council of Carpenters Employee Benefits Fund, v. Exhibit Works, Inc.,* 868 F. Supp. 2d (E.D. Mich. 2012). There, the court held that the plaintiffs-trustees were not entitled to audit payroll and wage related records for employees working beyond the geographical jurisdiction of the CBA. *Exhibit Works*, 868 F. Supp 2d at 594. This case is inapposite and easily distinguished from the case at bar for several reasons.

First, the audit provisions in the CBAs are much broader than those in *Exhibit Works*, which were limited to "payroll and wage related records." *Id.* at 594. As cited above, the audit provisions in the CBAs in the present case include:

> regular audits of the Employer's payroll and other records to ascertain whether the Employer has complied with the requirements of this Agreement…[*and*] to have access to, and to inspect any and all books, records, accounts, ledgers, and records of original entry, for the purpose of determining whether or not the Employer has conformed with the provisions of this Agreement.

(ECF No. 14-2; PageID.184; ECF No. 14-3, PageID.210–11).

11

Second, the CBAs here include "work preservation" and "sublet[ting] or subcontract[ing]" clauses which prohibit sending employees to do non-union work in outside jurisdictions, while the CBA in *Exhibit Works* does not. (ECF No. 14-2, PageID.181–82; ECF No. 14-3, PageID.205). These clauses obligate an Employer to refrain from subcontracting covered work to "any other individual or business entity of any type not signatory to this Agreement". (ECF No. 14, PageID.164). This means that an audit request is not limited to the "[t]erritorial [j]urisdiction" of the CBA because subletting employees to *any* non-signatory to the CBA is prohibited. (*Id.*)

So, while Plaintiffs do not explicitly request records from outside of Michigan in their requests, such records could be included in the audit per the above terms of the CBAs. If Defendant has conducted any such work outside the state of Michigan, it must be disclosed pursuant to these clauses and the CBAs.

Plaintiffs have not made any audit request that falls outside the scope of the 2016 or 2018 CBAs. This Court therefore finds the scope of audit as requested by Plaintiffs to be permissible under the CBAs.

    **c. Post-CBA Termination Audits**

Finally, Defendant argues that fund audit rights cannot be exercised after the term of the CBAs. It argues that because the CBAs have expired, so too has Plaintiffs' right to conduct an audit. (ECF No. 16, PageID.295-96). In support of its argument, Defendant cites *Serafino v. City of Hamtramck*, 707 Fed. Appx. 345 (6th Cir. 2017) which states that "the obligations under collective bargaining agreements 'cease, in the ordinary course, upon termination of the bargaining agreement.'" *Id.* at 351. However, courts have repeatedly rejected this claim when it comes to audits, specifically.

In *Rudd v. Baker Furniture*, 967 F. Supp. 984 (M.D. Tenn 1997), the Trustees wanted to conduct an audit, but the defendant refused. There, the defendant argued that because the term of the CBA had completely terminated, it was "no longer a legally enforceable document" and the Trustees had essentially missed their window of opportunity for conducting such an audit. *Rudd v. Baker Furniture*, 967 F. Supp. 984, 986 (M.D. Tenn. 1997). The Court disagreed, finding that based on the policies underlying ERISA and rulings in other similar cases, the funds' audit rights were enforceable after expiration where the trustees sought to collect benefits which accrued *before* the expiration. *Id.* at 989–90 (citing *Bldg. Serv. Emps. Pension Tr. v. Horsemen's Quarter Horse Racing Ass'n*, 609 F. Supp. 1075, 1078 (N.D. Cal. 1985)).

This case is no different. Here, Plaintiffs ask this Court to enforce their rights to conduct an audit pursuant to ERISA and during the pendency of the applicable CBAs. While the CBAs themselves have expired, the dates of the requested audit fall within the terms of the CBAs. An audit is by definition retrospective. Courts have repeatedly found audit rights to survive the expiration or termination of a labor agreement. *See Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190 (1991); *Bldg. Serv. Emps. Pension Tr. v. Horsemen's Quarter Horse Racing Ass'n*, 609 F. Supp. 1075, 1078 (N.D. Cal. 1985). So long as the information requested was generated during the course of the applicable CBAs, Plaintiffs' audit rights remain. *See Operating Engineers' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc.*, No. 20-10323, 2023 WL 4409096, at *12 (E.D. Mich. July 6, 2023) (finding that the Funds' audit demand requesting material generated *after* the applicable agreement had expired was invalid).

Absent any evidence that Plaintiffs' audit request includes material generated outside the dates of the applicable CBAs, Plaintiffs are entitled to enforcement of their audit rights as requested in the Complaint.

**CONCLUSION & ORDER**

For the reasons stated above, the Court ORDERS that Plaintiffs' Motion for Partial Summary Judgment and to Compel Audit, (ECF No. 14) which seeks Defendant's compliance with the audit due to Defendant's "Failure and Refusal to Permit Audit" (Count I), is GRANTED and Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED.

IT IS SO ORDERED.


Dated: October 17, 2023                         s/Sean F. Cox
                                                Sean F. Cox
                                                U. S. District Judge


I hereby certify that on October 17, 2023, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                                s/Jennifer McCoy
                                                Case Manager